**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| FANTA KOUDOUKARA,<br>*Plaintiff*,<br>v.<br>EMBASSY OF MALI,<br>*Defendant*. | Civil Action No. 24 - 1900 (SLS)<br>Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION AND ORDER**

Fanta Koudoukara filed this lawsuit against the Embassy of Mali alleging that the Embassy unlawfully fired her after she refused to have sex with the Ambassador of Mali and reported his harassment. The Embassy never appeared to defend itself. In June 2026, the Court granted default judgment to Ms. Koudoukara on some of her claims but declined to award damages because she did not provide enough information for the Court to assess damages. The Court then gave Ms. Koudoukara an opportunity to submit additional evidence in support of her damages claim. After Ms. Koudoukara did not provide the requested information, the Court dismissed the case. Now, Ms. Koudoukara moves for reconsideration of the Court's Order dismissing this case without awarding damages. For the reasons set forth below, and in light of Ms. Koudoukara's submission of additional evidence, the Court grants her motion and awards $155,509.27 in damages.

**BACKGROUND**

On June 3, 2026, the Court partially granted Ms. Koudoukara's Motion for Default Judgment, ECF No. 14, finding the Embassy liable on Ms. Koudoukara's claims under Title VII and the DC Human Rights Act. *See* Mem. Op., ECF No. 20; Order Granting in Part and Denying in Part Mot. Default J, ECF No. 21. Although the motion sought damages in the form of back pay,

front pay, emotional distress damages, and punitive damages, *see* Pl.'s Mem. Supp. Default J. at 15, ECF No. 14-1, the Court declined to award damages at that stage because Ms. Koudoukara had not met her burden to "prove her damages to a reasonable certainty." *See* Mem. Op. at 13 (cleaned up). Because it could not determine damages, the Court also declined to award attorney fees. *See id.* at 15 n.6.

To obtain the necessary information to make the required "independent determination of the sum to be awarded," *Walker v. Innovative Concept Sols. Int'l, Inc.*, 6 F. Supp. 3d 52, 54 (D.D.C. 2013) (cleaned up), the Court directed Ms. Koudoukara to "file [] supplemental submissions in support of her claimed damages[.]" Mem. Op. at 5. But her first Supplemental Memorandum and accompanying affidavit failed to support her claimed damages, providing only a single month's pay stub, written in French without translation. *See* Pl.'s Suppl. Mem. Supp. Default J., ECF No. 22. (June 22 Suppl. Mem.) So the Court tried again, directing Ms. Koudoukara to furnish specific "further evidence in support of her claim of damages." Min. Order (June 24, 2026). This time, the Court went further:

> Such evidence should include (but is not limited to): (1) proof of job searches and mitigation of damages, (2) translations of the Plaintiff's pay stub into English, (3) affidavits or other evidence explaining each line of the Plaintiff's pay stub and why it was earned (e.g. overtime), and (4) evidence of the costs incurred by the Plaintiff for treatment by a therapist that resulted from the Defendant's conduct.

*Id.* After requesting—and receiving—two extensions of time (one *nunc pro tunc*), Ms. Koudoukara ultimately produced three pieces of evidence: (1) she re-submitted her July 2023 pay stub, this time with a translation, *see* Ex. A to Pl.'s Mot. Extension Time, ECF No. 24-1; (2) she documented her "attempts at mitigation" through records of 75 job applications submitted to various employers from 2024 to 2025, *see* Pl.'s Suppl. Mem. Supp. Default J., ECF No. 25 (Aug. 7 Suppl. Mem.); Ex. A to Pl.'s Suppl. Mem. Supp. Default J., ECF No. 25-1; and (3) she submitted additional job application receipts from 2025 to 2026, accompanied by an unsigned

letter from Rannett Wallace-Gibson, an employment service specialist at Equus Workforce Solutions, stating that Ms. Koudoukara "ha[d] been actively involved in job search and other activities since August 2023," *see* Pl.'s Notice Suppl. Production, ECF No. 26; Ex. 1 to Pl.'s Notice Suppl. Production, ECF No. 26-1.

Because these submissions once again failed to comply with the Court's Orders—including its requirement that Ms. Koudoukara submit four specific categories of evidence—the Court concluded that it lacked a sufficient basis to determine her damages and directed the termination of this case without awarding damages. Min. Order (Aug. 11, 2026). Ms. Koudoukara moved for reconsideration of that Order, arguing that she had in fact "complied with the Court's Orders for the 4-types of documents requested[.]" Pl.'s Mot. Recons. at 6, ECF No. 27. But as this Court noted, Ms. Koudoukara had *not* submitted the evidence requested by this Court's Orders. *See* Min. Order (Aug. 31, 2026). Across her submissions, she failed to submit any evidence of costs incurred for treatment by a therapist, ignored the Court's request for an explanation of her pay stub, and provided contradictory affidavits regarding her monthly salary. *Id.* Despite these defects, though, the Court permitted Ms. Koudoukara to submit a supplemental memorandum regarding her damages, which she has now done. *See* Pl.'s Suppl. Mem. Supp. Default J., ECF No. 28 (Sept. 14 Suppl. Mem.).

**DISCUSSION**

In general, a district court may revise any order if "the moving party has demonstrated (1) an intervening change in the law; (2) the discovery of new evidence not previously available; or (3) a clear error in the first order." *United States v. All Assets Held at Bank Julius Baer & Co.*, 502 F. Supp. 3d 91, 95 (D.D.C. 2020) (cleaned up). Here, there has been no intervening change of law or newly discovered evidence. And in light of Ms. Koudoukara's noncompliance with the Court's repeated requests for evidence of her damages, there was no clear error in the Court's

August 11, 2026, Order. But "[e]ven where none of these three factors is present, 'the Court may nevertheless elect to grant a motion for reconsideration if there are other good reasons for doing so.'" *Id.* (quoting *Cobell v. Norton*, 355 F. Supp. 2d 531, 540 (D.D.C. 2005)). For instance, as Ms. Koudoukara points out, a judgment may be amended or altered under Federal Rule of Civil Procedure 59(e) to avoid "manifest injustice." *Firestone v. Firestone*, 76 F.3d 1205, 1208 (D.C. Cir. 1996) (internal quotation omitted). Given the nature of Ms. Koudoukara's claims and her belated submissions, the Court elects to reconsider its Order to avoid manifest injustice.

To award damages arising from default judgment, the Court must "make an independent determination of the sum to be awarded unless the amount of damages is certain." *Walker*, 6 F. Supp. 3d at 54 (cleaned up). And Ms. Koudoukara must "prove [her] damages to a reasonable certainty." *Guerra*, 2025 WL 2709631, at *1 (cleaned up). She seeks the following damages for her Title VII and DCHRA claims: (1) $211,833.12 in lost wages ("back pay" and "front pay"), (2) $700,000 in emotional distress damages (arising from her DCHRA claims only, *see* June 22 Suppl. Mem. at 2), (3) $1,000,000 in punitive damages, (4) $605 in costs, and (5) $31,662.75 in attorney fees. *See* Proposed Order at 1, ECF No. 14-2. Having reviewed the latest submissions, the Court awards $73,241.52 in lost wages, $50,000 in emotional distress damages, $0 in punitive damages, $605 in costs, and $31,662.75 in attorney fees, totaling $155,509.27.

**A. Lost Wages**

First, Ms. Koudoukara seeks lost wages. She divides her request into two separate categories, "back pay" and "front pay," totaling $123,000.12. Setting aside the back pay–front pay distinction, though, she essentially requests six years of compensation at her prior salary, dating from July 2023 (when she was terminated) to July 2029 (three years from the date of her most

recent affidavit). *See* Aff. Pl. Fanta Koudoukara. ¶ 20 (June 22 Koudoukara Aff.), Ex. A to June 22 Suppl. Mem., ECF No. 22-1.

"Title VII subjects claimants to a 'statutory duty to minimize damages,' and claimants must 'use reasonable diligence in finding other suitable employment[.]'" *Jean-Baptiste v. D.C.*, 958 F. Supp. 2d 37, 44 (D.D.C. 2013) (quoting *Ford Motor Co. v. EEOC.*, 458 U.S. 219, 231 (1982)). And the D.C. Court of Appeals has interpreted the DCHRA to include an identical duty to mitigate. *See Ottenberg's Bakers, Inc. v. D.C. Comm'n on Hum. Rts.*, 917 A.2d 1094, 1105–06; (D.C. 2007) (per curiam) (citing Title VII caselaw to describe the plaintiff's duty to mitigate damages under the DCHRA). Thus, the Court has repeatedly requested evidence of Ms. Koudoukara's efforts to mitigate her damages. *See, e.g.*, Min. Order (June 24, 2026) (directing Ms. Koudoukara "to provide further evidence in support of her claim of damages" including "proof of job searches and mitigation of damages"); Min. Order (Aug. 11, 2026) (same). In response, she has submitted email receipts from various job applications submitted from July 2024 to August 2026. *See* Ex. A to Aug. 7 Suppl. Mem.; Ex. 1 to Pl.'s Notice Suppl. Production. And she has furnished an unsigned letter from Rannett Wallace-Gibson, an employment service specialist at Equus Workforce Solutions, stating that she "has been actively involved in job search and other activities since August 2023[.]" Ex. 1 to Pl.'s Notice Suppl. Production at 70.

On this record, the Court cannot award Ms. Koudoukara six years of lost wages. For starters, the unsigned letter from Ms. Wallace-Gibson, without corroboration, cannot serve as evidence of mitigation. What is left, then, are receipts of job application submissions reflecting that Ms. Koudoukara began applying to jobs in July 2024—approximately one year after her July 2023 termination. And there is nothing in the record supporting an award of damages for three years in the future. In light of Ms. Koudoukara's documented, though belated, efforts to seek

employment, the Court will award her two year's wages at the monthly rate of $3,051.73 represented in her most recent submission, *see* Aff. Pl. Fanta Koudoukara. ¶ 20, Ex. 2 to Sept. 14 Suppl. Mem., ECF No. 28-2, totaling $73,241.52 in lost wages.

**B. Emotional Distress**

Ms. Koudoukara also seeks $700,000 in emotional distress damages arising from her DCHRA claims. She previously represented that she has seen a therapist, *see* June 22 Koudoukara Aff. ¶ 22, but she has submitted no additional evidence of her damages beyond her own prior affidavits. *See* Sept. 14 Suppl. Mem. 2–3. And in her affidavit, she attests:

> I have been scarred from the experiences at work. I have had sleepless night and nightmares that the Ambassador is stalking me or pressuring me to have sex. These experiences have affected my day to day interactions especially with men. I have been feeling less confident in my daily tasks and try to minimize my communications with friends and family. The workplace behavior has affected my self confidence. As a result, I have also had a strained relationship with my friends and family since my termination, including not wanting to meet or gather for social functions. My self confidence has been ruined by the Ambassador. I frequently cry myself to sleep.

June 22 Koudoukara Aff. ¶ 21.

Under D.C. law, "[w]hile damages are not required to be proven with mathematical certainty," *Zoerb v. Barton Protective Servs.*, 851 A.2d 465, 471 (D.C. 2004) (cleaned up), "plaintiffs must provide some reasonable basis upon which to estimate damages," *President, Directors of Georgetown Coll. v. Wheeler*, 75 A.3d 280, 293 (D.C. 2013) (cleaned up); *see also Democracy Partners, LLC v. O'Keefe*, No. 25-7080, 2026 WL 2451656, at *14 (D.C. Cir. Aug. 21, 2026) (Wilkins, J., concurring in part) (same). "While plaintiffs are not required to offer expert testimony to support a damages award, the weight of the evidence must support the damages given." *Jean-Baptiste*, 931 F. Supp. 2d at 20 (citing *Jefferson v. Milvets Sys., Tech., Inc.,* 986 F. Supp. 6, 8 (D.D.C. 1997)). And courts have remitted awards of emotional distress damages when plaintiffs have failed to furnish evidence corroborating their testimony. *See, e.g.*, *Jean-*

*Baptiste*, 931 F. Supp. 2d at 20 (remitting a $3.5 million award of emotional distress damages to $350,000); *Liberatore v. CVS New York, Inc.*, 160 F. Supp. 2d 114, 121 (D.D.C. 2001) (remitting a $1.1 million award of emotional distress damages to $200,000); *Spence v. Bd. of Educ. of Christina Sch. Dist.*, 806 F.2d 1198, 1201 (3d Cir. 1986) (affirming remittur of a $22,060 award of emotional distress damages). An independent survey undertaken by Judge Ricardo Urbina in 1997 concluded that "in discrimination and retaliation cases the range of jury awards is generally between $10,000 and $150,000." *Nyman v. FDIC*, 967 F. Supp. 1562, 1571 (D.D.C. 1997).

Considering this authority and Ms. Koudoukara's submissions, the Court declines to award $700,000 in emotional distress damages. The Court does not minimize Ms. Koudoukara's suffering. Sexual harassment remains widespread and is a scourge on workplaces across our country. Victims suffer enduring psychological harm. But Ms. Koudoukara has not established an entitlement to the award that she seeks. Considering this record—including the generality of Ms. Koudoukara's affidavits and the absence of other evidence—and having compared the facts alleged by Ms. Koudoukara with those adjudicated by other courts, the Court concludes that an award of $50,000 in emotional distress damages is appropriate.

### C. Punitive Damages

Next, Ms. Koudoukara seeks $1,000,000 in punitive damages arising from her Title VII and DCHRA claims. But as stated in the Court's Memorandum Opinion, a foreign state cannot be held liable for punitive damages under the Foreign Sovereign Immunities Act. *See* Mem. Op. at 14; 28 U.S.C. § 1606 ("[A] foreign state except for an agency or instrumentality thereof shall not be liable for punitive damages[.]"). Therefore, the Court cannot award punitive damages.

**D. Costs**

Ms. Koudoukara also seeks to recover $605 in costs. She represents that these costs were incurred in serving copies of the Complaint and other documents to the Embassy of Mali by mail ($200) and filing the Complaint ($405). June 22 Koudoukara Aff. ¶ 21; Dhali Decl. ¶ 7, Ex. 3 to Mot. Default J., ECF No. 14-5. Finding these costs reasonable, the Court will award $605 in damages. *See* Fed. R. Civ. P. 54(d)(1); *see also* D.C. Code Ann. § 2-1403.16(f) (allowing courts to grant any relief it deems appropriate, including, the relief provided in . . . [Section] 2-1403.13(a), to a person who brings a cause of action pursuant to" the DCHRA); D.C. Code Ann. § 2-1403.13(a)(1)(E) (providing for the "payment of reasonable attorney fees and costs").

**E. Attorney Fees**

Finally, Ms. Koudoukara seeks attorney fees. Because she has prevailed on her Title VII and DCHRA claims, she may recover reasonable attorney fees. *See* 42 U.S.C. § 2000e-5(k) (allowing the "prevailing party" in a Title VII case to recover "a reasonable attorney's fee . . . as part of the costs"); D.C. Code Ann. § 2-1403.13(a)(1)(E) (same as to the DCHRA). "The basic formula for calculating an attorney fee award" is to "multiply the number of hours reasonably expended in litigation by a reasonable hourly rate or lodestar." *DL v. District of Columbia*, 924 F.3d 585, 588 (D.C. Cir. 2019). A reasonable rate is the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). And "the relevant community is the one in which the district court sits." *Donnell v. United States*, 682 F.2d 240, 251 (D.C. Cir. 1982). The Court may also consider "a matrix showing the average hourly price tag of comparable lawyers." *Id.* at 589, 591. For instance, the D.C. Circuit has endorsed the use of the *Laffey* matrix, which was compiled in the 1980s "by inquiring into the billing rates of firms in Washington, D.C., which were engaged

in active litigation practice in the federal courts." *Id.* at 589 (cleaned up) (characterizing *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1521 (D.C. Cir. 1988) (en banc)).

Here, Ms. Koudoukara's counsel graduated law school in 2001, Dhali Decl. ¶ 4, an experience level for which the Laffey Matrix in effect between June 2024 and June 2025 provided an hourly rate of $1,141. *See* Ex. 2 to Mot. Default J., ECF No. 14-4; *accord* Laffey Matrix, http://www.laffeymatrix.com (last visited Sept. 22, 2026). And counsel represents that he expended 27.75 hours during this litigation. *See* Ex. A to Mot. Default J., ECF No. 14-5. Deeming the quantity of hours reasonable and applying the Laffey Matrix's hourly rate, the Court will award attorney fees in the amount of $31,662.75.

## CONCLUSION

For the above-stated reasons, the Court **GRANTS** the Plaintiff's Motion for Reconsideration, ECF No. 27, and awards damages to the Plaintiff in the amount of $155,509.27.

**SO ORDERED.**

SPARKLE L. SOOKNANAN
United States District Judge

Date: September 25, 2026